## FARMERS & BANKERS LIFE INS. CO. v. LEMON.

No. 33673.   March 6, 1951.

*228 P. 2d 634.*

Rittenhouse, Webster, Hanson & Rittenhouse, Oklahoma City, for plaintiff in error.

Leverett Edwards and Arthur Ellsworth, Oklahoma City, for defendant in error.

WELCH, J. The Farmers & Bankers Life Insurance Company, a corporation, commenced this action against Jimmie S. Lemon for the cancellation of a waiver of premium contract embodied in a rider attached to a certain insurance policy it had issued.

The policy, known as an "Ideal Educational Policy" was issued on the life of the defendant who was of the age of two years. It contained a provision for endowment of the defendant should he attain the age of 18 years. The policy was purchased by Jimmie Lemon, the father of the defendant. It contained a supplemental contract that in event of the death of the purchaser, Jimmie Lemon, thereupon future premiums payable on the policy would be waived. Application for the policy was made by Jimmie Lemon on November 14, 1945, and the policy was delivered on November 29, 1945. On July 14, 1946, Jimmie Lemon died. The first annual premium on the policy had been paid at the time of delivery of the policy.

Cancellation of the waiver of premium was sought on the alleged ground that the applicant, Jimmie Lemon, made false and fraudulent answers and representations as to his health.

In the written application for the policy, in that part containing request for premium waiver insurance, and above the signature of the applicant, Jimmie Lemon, there appears the following:

"2. Have you ever had any ailment or disease of:

(a) Brain or nervous system?   No

(b) Heart or lungs?   No

(f) Have you ever consulted a physician for any ailment or disease not included above?   No

6. Are you now in good health?   Yes

10. Name all causes for which you have consulted a physician in the last ten (10) years:   None."

In petition, the plaintiff alleged that for a period of approximately two years prior to the date of application for the policy the said Jimmie Lemon was in a poor state of health and all unknown to plaintiff; that beginning with the year 1943 he suffered a series of heart attacks which continued in intensity until a final attack from which he died in June, 1946; that on November 12, 1945, two days before giving the answers in the application he suffered

a severe heart attack. In reference to the questions and answers in the application, as we have set out above, the plaintiff alleged:

"All the aforesaid statements and representations were false and fraudulent and were made by the said Jimmie Lemon with full knowledge that the same were false and fraudulent and for the purpose of inducing the plaintiff to issue the said policy applied for with waiver of premium benefits rider on the life of the said Jimmie Lemon. . . ."

"No one of the officers or agents of the plaintiff had any knowledge whatsoever until after the death of the said Jimmie Lemon that the aforesaid statements and representations were false and fraudulent. . . . If said false and fraudulent representations had not been made but instead, true and correct answers had been made to the questions contained in the aforesaid application, this plaintiff would have deemed the said Jimmie Lemon uninsurable and would have refused to issue the waiver of premiums benefit rider attached to the 'Ideal Educational Policy'."

The prayer of the petition was "that the court decree that the said Waiver of Premiums Benefits rider as attached to the 'Ideal Educational Policy' be canceled."

The defendant, by guardian ad litem, filed answer in general denial of the allegations of plaintiff's petition.

Verdict and judgment was for the defendant, and the plaintiff brings appeal.

Argument for reversal is presented under two subdivisions in the plaintiff's brief:

"(1) Applicant did not fully disclose his physical condition as of the date of application, and the insurance company is entitled to the defense of fraud to avoid the policy.

"(2) The applicant was not in good health on the date of delivery of the policy, as required under the terms of the contract, and this constituted a breach of a condition precedent which prevented the policy from ever becoming effective."

Under subdivision one the plaintiff cites Republic Life Ins. Co. v. Tourtellotte, Ex'x, 187 Okla. 624, 105 P. 2d 254, where in the first paragraph of the syllabus, it is said:

"Material representations by applicant for life insurance relied on by company, when untrue and known by assured to be untrue, invalidate policy without proof of actual conscious design to defraud; intent to defraud being inferred from making of false representations."

Under subdivision two of argument the plaintiff makes reference to an expression of this court in Home State Life Ins. Co. v. Jennings, 179 Okla. 39, 64 P. 2d 304.

In the Jennings case we discuss the rules of law applicable to the issues of fact as may arise in an action to avoid an insurance policy upon a basis of willful false representation in the application, also the rules of law applicable when the relief sought rests on an issue of lack of good health of the insured at time of delivery of the policy. In reference to an issue of false representation in an application for insurance, we said:

"Most of our former decisions, if not all of them, have dealt with or discussed the term 'good health' as used in the application for insurance. And in testing the application to determine whether there was any willfully false representation it is important, if not necessary, to direct the inquiry to the knowledge or good faith opinion of the applicant as to his then good health or freedom from any serious malady. For if the applicant is going about his daily labor and has no reason to believe, and in good faith does not believe, that he is afflicted with any serious malady, and has no reason to know and does not know of any serious impairment of his health, then he is justified in representing himself to be in good health, and in such case he would not be guilty of a fraudulent or willfully false representation, even if it were then true that he was actually, but wholly unknown to him, then afflicted with a serious malady. . . ."

In test of the good faith of an applicant toward an insurer, clearly, representations of freedom from specific ailments and representations of good health are to be measured in the same light, the knowledge or good faith opinion of the applicant.

Herein, undisputedly, Jimmie Lemon had an appearance of good health and had long been going about his daily tasks and labor with an appearance of being unhampered by any physical disability at the time he made application for the policy on November 14, 1945.

It was shown that Jimmie Lemon consulted a physician on December 1, 1944, and gave a history "that he had had a slight reaction; convulsive seizures," and that he had had some slight attacks periodically since 1933, but without increasing severity. The doctor described the attacks as being a form of epilepsy, slight epilepsy, but gave no testimony as to advice thereof to Lemon or treatment therefor at such time, or at any time thereafter.

In our view of the testimony a reasonable conclusion might be drawn that the nervous reactions of Lemon were so slight as to not induce a belief in Lemon that he had ever had an ailment or disease of the brain or nervous system, or any thought or belief that he was not in good health on November 14, 1945, and there is no evidence that he was ever advised concerning a disease of his nervous system.

It was shown that Lemons consulted the same physician again on December 6, 1945, about a nervous attack. The doctor testified:

"He came to me that time because he said he had one of these little attacks. . . . but that same day he gave a history . . . of having some pain in the chest for the last year . . . . He came to my office on this other condition, and I led that from him, because I was making . . . a general examination."

From this testimony of a history given on December 6, 1945, it does not appear that the prior chest pains were of such severity as to alarm Lemon or induce belief that he was suffering an ailment or disease of the vital organs of the chest, for it is noted Lemon made no complaint of chest pains and described the same only at the prompting of the physician in connection with a general examination. In this view there is no evidence that Lemon had any knowledge or opinion that his chest vital organs were ailing or diseased or that he was otherwise than in good health on November 14, 1945, when he made application for the policy. In this view the facts concerning his subsequent consultation with another physician in 1946 are of little or no value as applied to the question of his knowledge or belief of his physical condition in November, 1945.

Admittedly, to sustain its charge of fraud in the application, the plaintiff had the burden of proving that the representations therein were untrue and known by the applicant to be untrue. Fraud is never presumed and the representations made by Lemon for the premium waiver insurance carry a badge of good faith until overcome by the sheer weight of evidence to the contrary.

In our view the evidence herein does not sustain the plaintiff's charge of false representations in the application for the premiums waiver insurance, and the judgment entered is not contrary to the weight of the evidence.

The plaintiff asserts the trial court erred in failing to properly instruct the jury upon an issue of whether Jimmie Lemon was in sound health at the time of issuance and delivery of the policy and presents argument that "the applicant was not in good health on the date of delivery of the policy, as required under the terms of the contract, and this constituted a breach of a condition precedent which prevented the

policy from ever becoming effective." Reference is made to a stipulation as appears in the application, which reads:

"(2) That no liability shall attach to the company until the first premium is paid and the policy is delivered to and received by me during the child's lifetime and good health, and while the health of the child is as described in this application, and if my application for Premium Waiver insurance is requested, then also during my lifetime and good health."

The policy and application were attached as exhibits to plaintiff's petition, but in the body of the petition no specific reference is made to the above-quoted stipulation, and there are no allegations directed to an issue as presented in the above-quoted proposition.

"All affirmative defenses must be specially pleaded, such as the defense that insured was not in sound health during the time the first premium was paid and the policy was delivered; . . ." 37 C. J. 610.

It is noted that in plaintiff's final pleading in the case, and in its answer to a cross-petition filed by the defendant, liability under the waiver of premium benefits rider is denied, but it is stated, "that the plaintiff has, at all times, held open the policy benefits and coverage upon proper and timely payment of premiums."

Such pleading and admission is inconsistent with an issue that the policy never became effective as is here asserted in effect. It is noted that in the allegation of lack of good health of Lemon in plaintiff's petition, the reference is made in connection with a charge of false representations in the application, and throughout the trial proceedings there is no indication of other or further reliance by the plaintiff on the terms of the stipulation in the application as above set out. Plaintiff made no request for an instruction as above mentioned, nor in motion for new trial made any complaint of the failure of trial court to instruct on an issue of good health as being required under the terms of the contract as is here asserted. There was no duty to instruct on an issue not presented. Inasmuch as the issue of good health on the day of delivery of the policy and as a requirement of the contract was not so relied on by the plaintiff in the trial court, and was not there presented, the questions as presented in the second subdivision of plaintiff's argument will not here be determined.

The judgment is affirmed.

ARNOLD, C. J., LUTTRELL, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, and ONEAL, JJ., concur. HALLEY, J., dissents.

HALLEY, J. (dissenting). In my opinion the plaintiff's pleading and evidence are sufficiently broad to sustain the defense that the deceased Jimmie Lemon was not in good health when the policy of insurance was delivered, and I consider that it was properly raised.

I dissent.