**ATLAS LIFE INSURANCE COMPANY, a corporation, Plaintiff in Error,**

**v.**

**Inez EASTMAN, Defendant in Error.**

**No. 34862.**

Supreme Court of Oklahoma.

Oct. 15, 1957.

Rehearing Denied Nov. 13, 1957.

Paul & McPheron, Durant, for plaintiff in error.

W. L. Steger, Durant, for defendant in error.

CARLILE, Justice.

The Atlas Life Insurance Company instituted this action against Inez Eastman to cancel a $1,000 insurance policy with double indemnity clause effective in the event of the accidental death of the insured issued by the company on the life of Arnold Lee Eastman, a minor, in which Inez Eastman, mother of the insured, was beneficiary. Plaintiff alleged in its petition that the policy was issued in consideration of the statements made by the insured in his written policy application, which contained questions concerning when he last consulted a physician, illness and duration, and whether he ever had any disease of the heart or high blood pressure, to which questions he wilfully and falsely answered no; that insured had consulted a physician several times and had known for many years that he was suffering from the ailments; that Inez Eastman was present when the application was prepared and signed the same as parent, and knew that the said answers in the application were false; that the statements were material to the risk and were relied upon by plaintiff. A return of the premium paid was tendered and plaintiff prayed that the policy be canceled.

The defendant filed an answer and cross-petition wherein she alleged that in December, 1945, Andrew Balch, agent of the plaintiff, requested the defendant to make application for life insurance on her son, Arnold Lee, that the agent filled out the application, but did not ask the defendant any questions in connection with the application except the name of the insured, his height and weight, age of his parents, and if he had any deceased brothers or sisters; that no questions were asked concerning the physical condition or health of the insured; that she did not read the application until after the death of the insured, which occurred in September, 1947; that the insured was not present at the time the application was filled out, and that his name to the application was subcribed by the defendant at the suggestion and insistence of the plaintiff's agent; that defendant made full disclosure to plaintiff, through its agent, of all questions propounded to her at the time the application was completed; that the death of the insured was caused by a cerebral hemorrhage resulting from a bodily injury effected solely through external, violent and accidental means resulting from a fall. The defendant prayed judgment against plaintiff for $2,000. A jury trial was had, resulting in a verdict and judgment for defendant for $2,000, and the plaintiff appealed.

The parties will be referred to the same as they were in the trial court.

The plaintiff sets up eight assignments of error, 1, 2, 7 and 8 of which are presented and argued under a general statement that the court should have instructed a verdict for plaintiff for the cancellation of the policy; that the verdict and judgment rendered is not supported by the evidence because of material false statements in the application concerning the health of the insured, who was suffering from a heart disease at the time of delivery of the policy, and asserts that the policy may be cancelled by the insurer where it relies upon material false statements in the application and no medical examination is required. Decisions from other states, as well as from this court, are cited by plaintiff as supporting its statement.

One of the decisions relied on by plaintiff is National Aid Life Insurance Co. v. Honea, 201 Okl. 41, 202 P.2d 221, which policy there involved contained a provision that no liability was imposed upon the insurer until delivery of the policy was made while applicant was in good health, and it was there held that the company was not liable because the uncontradicted evidence showed the insured at the time of delivery of the policy was afflicted with a fatal malady which continued uninterruptedly and caused his death. The application for the policy involved in the action now before us contained a provision that the policy should not take effect unless it was delivered to applicant during his good health. The plaintiff relied on the provision and the

burden was upon it to establish that the insured was not in good health upon delivery of the policy.

Dr. H of Durant was produced as a witness by plaintiff and testified that he examined the insured professionally in December, 1943, when the insured consulted him for a digestive upset, and the diagnosis he made at that time was a congenital mitral stenosis with enlargement of the heart, and that he so advised him and prescribed medicine for him, but not for the heart. The doctor further testified that in August, 1946, he gave the insured a general physical examination for vocational rehabilitation service and found with regard to his heart that it was moderately enlarged, with a presystolic murmur; that he did not recall whether he advised the patient with regard to that condition. His report of the examination was mailed to Mr. Reed, who was in charge of the Vocational Rehabilitation Program, which report was put in evidence. The doctor was asked to compare the condition of the insured in 1946 with his condition when he examined him in 1943 and stated it was the same condition. The doctor was then asked:

"Q. Then, in your opinion, a man in that condition he was in in 1943 and in 1946, would you say that he was in good health or not in good health on December 18, 1945, or early in January, 1946, because of the heart condition?

"A. I can't answer that question accurately, Mr. Paul, because a great many of these people in ordinary every-day-life get along very well. They are not able, as a rule, to do things which require a good deal of exertion, without showing symptoms of it, but as far as general health is concerned, I don't think I could accurately say that he was or was not in good health at that time."

Mrs. Eastman, called as a witness by plaintiff, testified in part, that when the insured was three or four months old she took him to a doctor, who said there was something wrong with his heart, but did not say what; that she knew her son had heart trouble when the application for insurance was made; that she did not inform Mr. Balch, the agent, because he asked no questions.

Mr. Reed, Vocational Rehabilitation Counsellor, to whom Dr. H had mailed his 1946 report, testified that the program served people whose physical handicap contained a vocational handicap and helped them become adjusted to some kind of a job. Some of the record pertaining to the insured in the hands of the witness indicated that the insured led a normal life except for restricted physical activities; that the insured finished Durant High School in 1946; that he had worked in a shoe shop about two and a half years operating a machine repairing shoes.

Mr. Balch, the agent who wrote the policy, testified that he had never observed anything about the physical appearance of the insured to make him think he was in bad health.

On cross-examination, while she was testifying in her own behalf, Mrs. Eastman said she knew that her son was not in good health at the time the policy was delivered and admitted that he had heart trouble.

Dr. S, called as a witness by the defendant, was asked:

"Q. Doctor, isn't it a fact that people with cogenital heart ailment can live a long time, bear children and live to be old people?

"A. Yes, sir."

■ While the defendant, Mrs. Eastman, admitted on cross-examination that the insured was not in good health it is obvious that her answer was based on a conclusion, without scientific knowledge to support the same. We consider the following quotation from the opinion in National Life & Accident Ins. Co. v. Whitlock, 198 Okl. 561, 180 P.2d 647, 649, as applicable to the question here at issue:

"It is clear that the testimony of plaintiff that her husband was in good health was a conclusion, or the expression of an opinion, upon a matter as to which she was not qualified to judge.

That was a question which could be determined only by skilled medical practitioners or professional men of scientific ability in the diagnosis and treatment of the disease. It could not be determined from the testimony of unskilled witnesses. Inter-Ocean Oil Co. v. Marshall, 166 Okl. 118, 26 P.2d 399; Ft. Smith & Western Ry. Co. v. Hutchinson, 71 Okl. 139, 175 P. 922. The general rule is that in cases like the instant case, where the question is whether the insured was in sound health at the time the policy was issued, the liability of the insurer is determined by the actual or real condition of the insured, not by his apparent health, or anyone's belief or opinion as to his health. 37 C.J. 404, Sec. 78; Old Surety Life Ins. Co. v. Hill, 189 Okl. 250, 116 P.2d 910; 40 A.L.R. 662, note. Plaintiff, because of her lack of skill or scientific knowledge, could only testify to her opinion as to his apparent health."

▆ National Life & Accident Ins. Co. v. Roberson, 180 Okl. 265, 68 P.2d 796, 797, holds:

"Whether a person is in good health as that term is used in its ordinary meaning at the time of the delivery of an insurance policy must depend upon the facts and circumstances of each given case and cannot be determined by any general rule. Such questions are for the determination of a jury or the court sitting as a jury as the trier of the facts."

▆▆ We find the evidence relating to the health of the insured sufficient to require a submission of the question to the jury. The court instructed the jury that if they found and believed that the insured was not in good health the defendant could not recover on her cross-petition, and their verdict should be for the plaintiff. The jury's verdict for defendant includes a determination that the insured was in good health at the time of delivery of the policy, and we are unable to say that the finding is not supported by competent evidence.

The defendant denied that she made any false answers in the application, and that the answers which the plaintiff alleges were false were not made by her, but were filled in by the insurer's agent without her knowledge, and without the questions being asked her. Defendant's evidence was in part to the effect that in the latter part of August, 1947, Arnold Lee Eastman fell down porch steps, struck his head on a stone and was unconscious for five minutes. Thereafter he complained of a headache and later entered a hospital at Durant, where he remained until his death on September 22, 1947. Dr. S, who attended him and in whose hospital the insured died, testified that his diagnosis was that the insured died of a cerebral hemorrhage, and further stated that the blow on insured's head when he fell down the steps would likely cause him to die from a cerebral hemorrhage. On cross-examination the doctor said from a medical standpoint we think high blood pressure can cause a hemorrhage and death, but doubt it in this boy's case.

Dr. P testified that he saw the insured in the hospital shortly prior to his death. He was then complaining of a violent headache and the witness answered in the affirmative when asked if the blow on insured's head could have caused a cerebral hemorrhage.

There was direct conflict in the testimony of Mrs. Eastman and that of Andrew Balch, the agent who filled in the answers in the application, as to whether certain answers concerning the health of the insured were given by the beneficiary or were filled in by the agent without her knowledge and without the questions being asked her. Some of the questions and answers were:

"Q. Are you now in good health and free from bodily defect? A. Yes.

"Q. When did you last consult a physician, and for what? A. No.

"Q. Have you ever had any disease of the heart, or high blood pressure, or shortness of breath? A. No."

The beneficiary testified that the questions concerning the health of the insured were not asked by the agent, and that she correctly answered all questions asked her by the agent. The agent testified that the questions were propounded and the answers filled in correctly, that he did not know whether the beneficiary read the application before signing it. The record shows that three applications were filled out on the same day for insurance on three minor children of Mrs. Eastman, and the policies were issued to her by the company on each child; that the applications were written up in the dining room of the Gibson boarding house, where Mrs. Eastman worked.

■ "To avoid a policy of insurance for misrepresentation, the false statement must have been relied on by the insurer in issuing the policy; and the burden is upon the insurer, relying upon a defense of fraudulent representation, to plead and prove the facts necessary to sustain its defense." Adams v. National Casualty Co., Okl., 307 P. 2d 542, 543.

■ "A soliciting agent of insurer is insurer's agent in taking applications, with power and authority as to such applications, and acts performed or knowledge received and acted upon by him in connection with applications, are binding on insurer in the absence of fraud or collusion between agent and applicant." National Life & Accident Insurance Co. v. Cudjo, Okl., 304 P.2d 322, 324.

17 Appleman on Insurance Law and Practice, Sec. 9401, is in part as follows:

"Where an agent assumes the responsibility for answering the questions asked in the application, and answers falsely or incorrectly without the applicant having made any statements in connection therewith or knowing the manner in which they were answered, the insurer will be estopped to claim that the representations were false or incorrect."

■ "It is the duty of an agent for an insurance company to prepare the papers under his supervision so that they will accurately and truthfully state the result of the negotiations, and the agent's failure to do so is, in legal effect, the fault of the company." Knights and Ladies of Security v. Bell, 93 Okl. 272, 220 P. 594, 595.

■ There was competent evidence sufficient to require a submission of the issue and question relating to the allegedly false answers in the policy application and the jury found generally in favor of the defendant.

■ In presenting its assignments of error numbered 3, 4, 5 and 6 the plaintiff makes the statement that the court erred in admitting in evidence the policies of insurance issued by plaintiff on two children of Mrs. Eastman, which policies were not involved in the present action, and it is argued that such policies had no bearing on the issues herein and were prejudicial to plaintiff. It is not pointed out wherein the admission of the policies was error or prejudicial to plaintiff's rights and we observe none.

■ It is next asserted that the court erred in giving instructions numbered 5, 6 and 10, and in refusing to give certain instructions requested by the plaintiff. The plaintiff failed to properly preserve its exceptions to the instructions given or those refused in that no exceptions to the instructions were endorsed on the instructions and signed by the trial judge.

"Instructions complained of will not be examined by this court unless the complaining party has properly preserved his exceptions to the giving or the refusal to give the instruction of which complaint is made." Roger Mills County Co-Operative Ass'n v. Neice, 184 Okl. 48, 84 P.2d 621, 622.

**404**

In Klaus v. Fleming, Okl., 304 P.2d 990, 991, the opinion states:

> "In order to have a review of the action of a trial court in giving certain instructions, it is necessary that the exceptions to the instructions as given be signed by the trial judge, as provided by statute, 12 O.S.1951 § 578. The only exception to this rule is where prejudicial error, erroneous statements of fundamental law, appear upon the face of the instructions."

██ We have examined the instructions given, and find that the issues involved in the case were properly submitted to the jury under the instructions and no prejudicial error or misstatement of any fundamental principle of law appears on the face of the instructions.

██ The plaintiff next refers to the double indemnity clause of the policy and makes the general statement in its brief that the testimony relating thereto was not sufficient for the court to submit to the jury the question of the accidental death of the insured and erred in overruling its motion for an instructed verdict on the double indemnity feature of the policy. The statement is not supported by any authority. The evidence on the question was sufficient to require a submission of the issue to the jury and sufficient to support the verdict of the jury thereon.

> "Where questions of fact are submitted to the jury under instructions fairly stating the law applicable to the facts, verdict and court's judgment thereon will not be disturbed on appeal." National Life and Accident Insurance Company v. Cudjo, supra.

We find that the verdict and judgment are supported by competent evidence and that there were no errors sufficient to justify a reversal. The judgment of the District Court is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON, WILLIAMS, BLACKBIRD, and JACKSON, JJ., concur.