The Merchants National Bank of Newburyport *vs.*
New York Life Insurance Company.

Essex.   January 9, 1964. — January 31, 1964.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Insurance,* Life insurance: representations, assignment.   *Conflict of Laws.*

A misrepresentation in an application for a life insurance policy, that the
  applicant had never used alcoholic beverages to excess, materially in-
  creased the risk of loss as a matter of law under the law of Massachu-
  setts and entitled the insurance company to avoid the policy.   [746–
  747]
Misrepresentations in the answers to questions in a written application for
  a life insurance policy, that the applicant had never used alcoholic bev-
  erages to excess and had not been under observation or treatment in any
  medical institution, or suffered from any illness or consulted any physi-
  cian other than as stated in the application, made by a resident of Cali-
  fornia to whom the policy was issued there by an insurance company
  which would not have issued the policy if it had known of the facts
  concealed, materially increased the risk of loss as a matter of law under
  the law of California and entitled the insurance company to avoid the
  policy if that law applied.   [747]
Consent of the insurer to an assignment of a life insurance policy by the
  insured did not bar the insurer from disclaiming liability on the policy
  in an action thereon by the assignee.   [747]

Contract.   Writ in the Superior Court dated October 3,
1960.

The action was tried before *Lappin, J.*

*Malcolm G. Ayers,* for the plaintiff, submitted a brief.

*Richard Wait (Mark A. Michelson* with him) for the
defendant.

Cutter, J.   The insurance company (New York), through
a California office, in April, 1959, issued to a resident of
California an insurance policy on his life.   The policy was
assigned to the bank on May 15, 1959.   The insured died on
November 8, 1959.   The bank brings this action to recover
the face amount of the policy.

In his application, which was in evidence, the insured
represented that he had never used alcoholic beverages to

excess or been treated for alcoholism, and that he had never been under observation or treatment in any hospital, sanitarium, or other similar institution.   He also represented that, within ten years of making application, he had suffered from no illness not otherwise reported by him and had consulted no physician not named in his other answers.

In answer to a demand under G. L. c. 231, § 69 (as amended through St. 1946, c. 450; see *Krinsky* v. *Pilgrim Trust Co.* 337 Mass. 401, 407–408), the bank admitted the representations by the insured in his application; that the insured had consulted each of two doctors in Arcadia, California, on several occasions from 1953 through 1959; that he had undergone an X-ray of the spine at a hospital in 1957; that he had been under observation or treatment from July 21 to August 17, and on September 26 to 27, 1953, in a sanatarium; that he had consulted a doctor in San Gabriel on several occasions from 1952 to 1957 and had been given a chest X-ray and an electrocardiogram by that doctor; and that he had been in a hospital in Pasadena for two days in 1953 and in a hospital in Boston for three days in October, 1959.   It was also admitted that the insured (a) had reported excessive drinking to one doctor in 1957, and (b) had stated to a hospital in October, 1959, that he had consumed one fifth to two fifths of alcohol each day from early 1956 until November, 1958, and that thereafter "he was sober seventy-five per cent of the time."   On March 18, 1960, the bank had been notified by New York of its election to rescind the policy.

There was evidence (1) that from 1942 to 1950 the insured had worked for New York and had then showed no indication of excessive drinking, and (2) that New York, under its underwriting rules and practice, would not have issued the policy if it had known of the facts concealed.

Upon the admitted facts, the trial judge correctly directed a verdict for New York.   Under Massachusetts law, the misrepresentations (concerning the use of alcohol), as matter of law, materially increased the risk.   *Rainger* v. *Boston Mut. Life Assn.* 167 Mass. 109, 111.   See G. L. c. 175,

§ 186; *Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. 37, 39–40. We consider also the law of California, where the insured had his domicil (see Restatement 2d: Conflict of Laws [Tent. draft No. 6, 1960] § 346h), because the contract seems to have been made there. See *Davis* v. *New York Life Ins. Co.* 212 Mass. 310, 312. Under the law of California, the same result would be reached in the light of all the various admitted misrepresentations, the materiality of which from the standpoint of New York is indicated by the written requests for written answers on the application. See *McEwen* v. *New York Life Ins. Co.* 23 Cal. App. 694, 698 (see, however, second appeal in 42 Cal. App. 133, 143), *S. C.* 187 Cal. 144, 147. See also Deering's California Codes, Insurance, §§ 330–332, 334, 358–360; *Cohen* v. *Penn. Mut. Life Ins. Co.* 48 Cal. 2d 720, 725–728; *Maggini* v. *West Coast Life Ins. Co.* 136 Cal. App. 472, 475–476; *Burns* v. *Prudential Ins. Co.* 201 Cal. App. 2d 868, 871.

New York's consent to the assignment does not bar it from disclaiming liability. See *Northwestern Life Ins. Co.* v. *Montgomery*, 116 Ga. 799, 810; *State Mut. Life Ins. Co.* v. *Rosenberry*, 213 S. W. 242, 247–248 (Commn. of App. Tex.); Appleman, Insurance Law and Practice (1941 ed.) § 1221. See also *Langdeau* v. *John Hancock Mut. Life Ins. Co.* 194 Mass. 56, 66; *Davis* v. *Supreme Council of Royal Arcanum*, 195 Mass. 402, 408–409; *Kothe* v. *Phoenix Mut. Life Ins. Co.* 269 Mass. 148, 151; Taylor, Massachusetts Life Insurance Law, 96. Cf. as to property insurance policies, Appleman, op. cit. § 3456; Couch, Insurance (1930 ed.) § 1450t.

*Exceptions overruled.*