William H. HOOD, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant/Third–Party Plaintiff.

Gloria Jenson Rossi JORGENSEN, et al., Defendants,

v.

Hari P. AGARWAL, Third–Party Defendant.

Civ. A. No. 90–0972 (MB).

United States District Court, District of Columbia.

March 13, 1991.

Richard Arthur Micheel, Speights & Micheel, Washington, D.C., for plaintiff.

Charles Henry Fleischer, Mary Elizabeth Gallagher, Ross, Marsh, Foster, Myers & Quiggle, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BOUDIN, District Judge.

This case comes before the Court on the motion of defendant Prudential Insurance Company of America ("Prudential") for summary judgment. Plaintiff William H. Hood filed a three-count amended complaint, seeking recovery of life insurance proceeds from Prudential on contract, misrepresentation and agency theories. Prudential alleges that the policy was voided by false statements and material omissions made on the insurance application by the decedent, Nancy L. Jenson, about the state of her health. For the reasons stated below, the motion for summary judgment will be granted as to Count I. Counts II and

III will be dismissed for failure to state a claim on which relief can be granted.

## I. THE FACTS

As presented by the record, the pertinent facts of this case are simple and not subject to reasonable dispute. On May 23, 1988, decedent Jenson applied for a life insurance policy with Prudential through one Hari P. Agarwal, an insurance agent or broker located in Lanham, Maryland. Although Jenson was a District of Columbia resident, the application for insurance listed Agarwal's Maryland address as her mailing address.[1] The application also represented that Jenson had no adverse health history, no drug or alcohol problems, and had received no medical attention in the past five years other than a "routine physical." It further represented that Jenson had never been refused life or health insurance coverage.[2] Prudential issued the policy to Jenson on August 2, 1988.

In fact Jenson had an extensive history of medical problems, including chronic alcohol abuse, anemia, and a fractured wrist, and had undergone numerous medical tests and consultations related to those conditions throughout 1987. Jenson also had previously applied for life insurance with The Metropolitan Life Insurance Company, which application was denied on health grounds in April of 1988. Jenson died on July 8, 1989, at age 36. On her death certificate, the immediate cause of death listed was "fatty metamorphosis of the liver"; the contributing cause was "chronic ethanolism by history." When plaintiff Hood asserted his claim as beneficiary of the $100,000 policy, Prudential denied liability, declared the policy void, and tendered a refund of all premiums.

This suit followed. In his amended complaint, Hood asserted as his first count that he was entitled to recover under the insurance policy. His second and third claims, premised on "misrepresentation" and "agency," are discussed at the conclusion of this opinion. Following discovery and contingent third-party claims not at issue here,[3] Prudential sought summary judgment on the ground that Jenson's application contained deliberate material misstatements and omissions that rendered the policy void. Hood opposed the motion, and oral argument was held on January 11, 1991.

## II. DISCUSSION

### A. *Count I*

The principal questions presented by Count I are (1) whether Prudential may avoid the policy claim on grounds that Jenson's application contained false statements and material omissions that invalidated the policy, and (2) whether Prudential

---

1. It has been suggested in this litigation, but not clearly established, that during the relevant period Prudential may have had a policy of declining to write life insurance for any District of Columbia residents as a result of D.C.Code § 35–223, relating to AIDS testing. This circumstance may explain the incorrect Maryland address given in the policy application.

2. The relevant portions of Jenson's Prudential application read as follows (handwritten responses are underscored):

3. When was a doctor last consulted by:
   a. Proposed Insured? Mo. <u>11</u> Yr. <u>86</u> Reason for any check-up, doctor's advice, treatment and medication. <u>Routine Physical All Normal</u>
5. Has any person to be covered ever:
   d. been treated or counseled for alcoholism or other drug dependency? <u>No</u>
   e. had life or health insurance declined, postponed, changed, rated-up or withdrawn? <u>No</u>

7. Other than as shown above, has any person to be covered ever been treated by a doctor for or had any known sign of a disease or disorder of the:
   d. spine, joints, skull or other bones? <u>No</u>
   g. blood, glands or skin? <u>No</u>
8. Other than as shown above, in the past 5 years has any person to be covered:
   a. consulted or been attended by any doctor or other practitioner? <u>No</u>
   b. had electrocardiograms, x-rays for diagnosis or treatment, or blood, urine or other medical tests? <u>No</u>

3. The contingent claims relate to two issues: (1) whether, if insurance proceeds are to be paid, they should be paid to Hood or to other possible claimants; and (2) whether, if Prudential is held liable, Agarwal is liable to it. Given the Court's holding that there is no liability on the policy claim, these contingent claims need not be addressed.

is estopped from asserting this defense due to the actions of Agarwal, who is alleged by Hood to have been acting as Prudential's agent. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court concludes under this standard that Prudential's defense is valid, and that any estoppel argument offered by Hood must fail.

■ Jenson was a District of Columbia resident, and it is asserted by Prudential, and not disputed by Hood, that all of the pertinent events occurred here. Accordingly, District law governs this case. Section 35–414 of the District of Columbia Code provides:

The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company. D.C.Code Ann. § 35–414 (1981).

The statute establishes a two-tiered test, which requires a false statement and either deceptive intent on the part of the applicant or materiality as defined by the statute. *Skinner v. Aetna Life and Casualty*, 804 F.2d 148, 149 (D.C.Cir.1986). Jenson's insurance application plainly contained both substantial omissions and positive misrepresentations about her adverse medical history. The application, filed in 1988, showed that her last medical consultation was a "routine physical" in November of 1986, and affirmatively and falsely stated "no" to the question asking whether Jenson had consulted a doctor within the past five years other than as disclosed in the application. In fact, according to Prudential's statement of material facts not in issue, Jenson had visited the George Washington University Medical Center for medical treatment at least half a dozen times in 1987, once for acute alcohol intoxication. None of these visits was disclosed in the application. In his reply to Prudential's statement of material facts, Hood fails to dispute any of these visits, or the falsity of Jenson's answers.

Once an applicant's statement is determined to be false, the next question under District of Columbia law is whether the false statement either was made with intent to deceive or had a material effect on the insurance company's acceptance of the risk. The issue of Jenson's intent to deceive need not be reached, since the false statements on her application were clearly material. *Hill v. Prudential Ins. Co.*, 315 A.2d 146, 148 (D.C.1974).

Under Section 35–414, "[t]he test of materiality is whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant." *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 172 (D.C.Cir.1961), *quoted in Metropolitan Life Ins. Co. v. Johnson*, 363 A.2d 984, 987 (D.C.1976). Jenson's treatment, which an accurate application would have revealed, is "material" in . that it reasonably and substantially bears on the risks assumed by the insurer. Even without more, it seems plain that treatment related to possible alcoholism is a matter that "would reasonably influence the insurer's decision as to whether it should insure the applicant." *Jannenga*, 288 F.2d at 172. Although the District of Columbia courts have apparently not ruled on the materiality of alcoholism, courts in other jurisdictions have found such misstatements or omissions to be material as a matter of law. *E.g., Hofmann v. John Hancock Mut. Life Ins. Co.*, 400 F.Supp. 827, 830 (D.Md.1975).

In this case there is more. Prudential's sworn interrogatory answer, supported by reference to Prudential's underwriting guidelines, affirmatively asserts that the Prudential policy would not have been issued if the Jenson application had disclosed the truth. The contention is both plausible and uncontested by Hood. This uncontested representation essentially brings the case within the rule of *Skinner v. Aetna Life Ins. Co.*, 607 F.Supp. 403 (D.D.C.1985), *aff'd*, 804 F.2d 148 (D.C.Cir.1986), where

this Court held that an omitted medical condition was material where the insurer offered similar proof that it would have denied the application if the medical history had been disclosed.

Plaintiff challenges the materiality element on the ground that, contrary to the death certificate, Jenson did not die of alcohol-related causes, and the omissions on her application must therefore be immaterial. There is no need to reach the evidentiary issues as to the cause of Jenson's death. It is well-settled under District of Columbia law that material false statements need not be related to the cause of death in order to void the policy. *E.g., Johnson v. Prudential Ins. Co.,* 589 F.Supp. 30, 35 (D.D.C. 1983), *aff'd,* 744 F.2d 878 (D.C.Cir.1984); *Jones v. Prudential Ins. Co.,* 388 A.2d 476 (D.C.1978).

■ Turning to estoppel, the best case that can be made for Hood is as follows.[4] Hood has offered an affidavit attesting that it is a common insurance industry practice for salespersons to ask the application questions orally, and to mark the answers for the proposed insured. Prudential conceded this point at oral argument. If it was Agarwal, and not Jenson, who inserted the false answers on the application, and if Jenson signed the application ignorant of the misrepresentations it con-

tained, then there is some basis in District of Columbia law for an equitable estoppel binding Prudential to the actions of Agarwal, its putative agent,[5] and barring it from raising the statutory defense. *Metropolitan Life,* 363 A.2d at 988; *Blair v. Prudential Ins. Co.,* 472 F.2d 1356, 1359–63 (D.C.Cir.1972).

District of Columbia case law on this question is not crystal-clear and, if anything, is probably more hostile to equitable estoppel than is being assumed here.[6] Nonetheless, at the very least the case law indicates that Hood must establish two things in order to prevail on an estoppel theory: that Agarwal filled in the false answers knowing them to be false, and that Jenson signed the application ignorant of the fact that false answers were being or had been inserted by Agarwal.[7] If Jenson signed the application aware that it did or would contain false answers, there would be no basis to estop Prudential from challenging the policy.

If a showing of Agarwal's involvement in the deception alone created an estoppel, it is possible that summary judgment for Prudential would be inappropriate, for Hood's affidavit of industry practice might be sufficient to warrant a trial on the issue of whether Agarwal filled in the false answers.[8] But to establish an estoppel, the

---

4. While Hood's opposition to the summary judgment motion does not squarely make the equitable estoppel argument that follows, it does cite cases that utilize the estoppel doctrine. In addition, Hood's affidavit relating to insurance industry practice, discussed below, fits within the framework of such an argument. Accordingly, the Court has addressed the issue in detail.

5. Whether Agarwal in reality was acting as Prudential's agent is a matter of dispute. Prudential contends that Agarwal was at most a broker who placed insurance with various companies, and thus an agent of the insured, not the insurers. On the other hand, there is in the record a business card of Agarwal's bearing the Prudential logo and the title "Prudential Agent" beneath Agarwal's name. For purposes of deciding the motion for summary judgment, it is assumed that a jury might find that Agarwal was an agent or that he possessed apparent authority.

6. *E.g., Hill,* 315 A.2d at 148 (no estoppel where insured signed a form statement without read-

ing its contents); *Metropolitan Life,* 363 A.2d at 989–90 (no estoppel absent fraud or duress by the agent inducing insured to sign the application without reading it).

7. In *Metropolitan Life,* 363 A.2d at 989, the court denied equitable estoppel, explaining that it would be appropriate where "applicant provided the insurance agent with full and truthful information about his health," and further "had good reason to believe that the information furnished had been transcribed accurately by the agent." In *Blair,* 472 F.2d at 1358–59, where the basis for an estoppel was described, the insured's wife was both present at the time the application was filled out and available to attest that her husband had not read the false application.

8. To inculpate Agarwal, Hood would have to show not only that Agarwal wrote the answers, but also that he knew them to be false. The evidence on this issue appears to be scattered and somewhat thin, but it is unnecessary to reach this issue on summary judgment in light of the ruling on the other elements of the estoppel claim.

party asserting the estoppel is required to prove each element. Hood points to no facts from which a reasonable jury could conclude that, assuming Agarwal wrote the answers, Jenson was unaware that the application she herself signed contained such false answers. At a minimum, in order to survive a motion for summary judgment, Hood would have to offer evidence to show that Jenson did not read the application after it was completed.[9] Again, no such evidence has been offered.

The plaintiff's burden to produce credible evidence must be met at the summary judgment stage, and speculation about potential evidence at trial would not carry that burden. *See Celotex, supra.* It is worth noting, however, that there is no reason to suppose that additional evidence on this issue would be available at trial. At oral argument, plaintiff's only suggestion of possible further evidence to support his contentions was that Agarwal, who so far has avoided service of the third-party complaint naming him as a defendant in this case, might appear in time to testify at trial. It was suggested that Agarwal may have fled the country, but in any event, there is little reason to believe that he would appear at trial, and no reason to think he has any interest in exculpating Jenson, thereby inculpating himself. Accordingly, summary judgment is GRANTED on Count I of the amended complaint.

### B. *Counts II and III*

Prudential's motion for summary judgment sought dismissal of the entire complaint. The discussion in the motion, however, was directed toward the policy claim in Count I, with little or no mention of Counts II and III, the "misrepresentation" and "agency" claims. Hood's response similarly did not address Counts II or III or assert that they represented independent claims or barred summary judgment on the entire complaint. Nevertheless, out of an abundance of caution, the Court at oral argument questioned Hood's counsel as to whether Counts II and III were intended as independent claims and, if so, how each stated a cause of action.

At argument, Hood's counsel conceded that Count III does not comprise an independent cause of action. Indeed, it is clear that Count III on its face merely alleges facts that might relate to the claim made in Count I.[10] Accordingly, Count III must be dismissed for failure to state a claim on which relief can be granted.

■ It was not clear to the Court at oral argument that plaintiff was prepared to make a similar concession as to Count II and, accordingly, the misrepresentation claim must be addressed on its merits. Count II asserts in substance that Agarwal made misrepresentations to Jenson and knew the application to be false;[11] earlier paragraphs of the complaint make evident that the misrepresentations charged are that Agarwal knew that he was unable to write Prudential policies for District of Columbia residents but nevertheless misrepresented to Jenson that he could write a policy for Jenson using Agarwal's own address in Maryland. Amended complaint ¶¶ 10–12. The application was false, by this theory, because the application shows the application to have been written in Lanham, Maryland, whereas the policy was

---

9. *See, e.g., Quillin v. Prudential Ins. Co.,* 280 F.2d 771, 776 (4th Cir.1960), holding (under Virginia law) that the beneficiary was required to offer evidence that the applicant signed the policy without reading it. Such evidence was provided in *Blair, see supra* note 7, and in this Court's judgment, it is the minimum proof that would be required by courts in the District of Columbia. *See, e.g., Metropolitan Life,* 363 A.2d at 989.

10. Count III reads: "That at all times Agarwal was Agent/Solicitor to sell life insurance policies for Prudential. That Prudential approved said application and wrote the Policy for deceased, and Deceased relied on her life being covered for 100,000.00 by plaintiff, Prudential a recognized leader in the insurance industry."

11. Count II reads: "Agent Agarwal made misrepresentations to Deceased Jensen [sic] in order to sell a Prudential Life Insurance Policy,

actually written in the District of Columbia. *Id.* ¶ 13.[12]

There are two possible ways of viewing these assertions incorporated by Count II, but neither leads to a favorable result for Hood. First, assuming that the misrepresentations attributed to Agarwal had not been made and that Jenson's address had been correctly stated, the only immediate likely consequence would be that no Prudential policy would have been issued to Jenson. In that event, however, Hood would not be able even to assert his present policy claim. The alleged misrepresentation and false address might be relevant to Count I if Hood claimed on the policy and Prudential then asserted that the policy was void because Prudential had no authority to issue a policy in the District of Columbia, but that is a defense that Prudential has never made.

Second, it might be argued that a secondary consequence of Agarwal's alleged misrepresentation of his authority and misstatement of the address is that, if he or Prudential instead had refused Jenson's application, she would then have sought insurance coverage from other carriers despite two rejections, honestly answered their questionnaires, obtained a valid policy, and made Hood the beneficiary under it. However, this chain of events is sheer speculation and, on one crucial point, wholly improbable: given Jenson's medical history, there is no basis for supposing that any company would have issued a policy on her life. Indeed, one company had already turned her down, and Prudential's affidavit asserts that it too would have done so if her medical history had been revealed. Under these circumstances, Count II of the amended complaint must also be dismissed for failure to state a claim on which relief can be granted, because even assuming that the misrepresentation of authority and misstated address can be found and imputed to Prudential, they do not connect to any colorable claim of injury.

and Agent knew the application was false when he wrote it, and accepted deceaseds premium."

**12.** Not only do these specifications in the complaint of misrepresentation and falsity dovetail

## III. CONCLUSION

In accordance with this Memorandum Opinion, an Order will be entered granting defendant's motion for summary judgment and dismissing this case.

with Count II's general language but there are no other misrepresentations or false application statements described anywhere else in the complaint.