Shirley **CLABORN**, as Personal Representative for the Estate of Robert E. Claborn, Deceased, Appellee,

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois insurance corporation, Appellant.**

No. 78682.

Supreme Court of Oklahoma.

Jan. 23, 1996.

**3.** 45 O.S.1991, §§ 766–769.

Arnold D. Fagin, Pamela Sue Holtzclaw, Michael L. Mullins and R. Amanda McInnis–

Nixon, Fagin & Fagin, Oklahoma City, for Appellee.

James W. Berry, James W. Rhodes and Don J. Gutteridge Jr., Kerr, Irvine, Rhodes and Able, Oklahoma City, for Appellant.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Oklahoma Division IV, to review an unpublished order of the Court of Appeals. The issues addressed in the present matter is whether: (1) Claborn's evidence sufficiently supports a claim of breach of contract, in the face of Washington National's defense of misrepresentation; and (2) The trial court erred as a matter of law in submitting the bad faith claim to the jury.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

This matter arises out from a health insurance application with Washington National completed by Mr. Claborn on September 12, 1988. This new policy was to replace Mr. Claborn's then current policy with State Farm Insurance Company. When asked by the agent whether in the preceding five years he had been admitted to the hospital or treated for alcoholism, Claborn testified at deposition that when he was making the application he told the agent "not any more." When contacted by a representative of the insurance company by phone, calling to confirm the answers on the application, Claborn answered "no" to both questions. These statements were not true as, in the five years preceding the application, Claborn had been admitted twice to the hospital for a seizure disorder related to alcoholism, and had three times been treated for alcoholism. The insurance policy Mr. Claborn held with State Farm contained a rider excluding coverage for seizure disorders. Nevertheless, Claborn's negative answers to the medical questions on his application resulted in the issuance of a health insurance policy which was effective October 1, 1988.

In January of 1989, Claborn learned that he had oral cancer. With the advice and assistance of his brother-in-law, an experienced insurance agent, Claborn informed Washington National about the misrepresentations on his policy application. This letter was dated January 27, 1989. Washington National's underwriting rules called for the automatic rejection of an applicant who had been treated for alcoholism within the five-year interval preceding the application, and consequently, Claborn was informed at the end of March of 1989 that his policy was rescinded as a result of his misrepresentations, and premium refunded. Claborn then brought this action to recover actual and punitive damages in tort, based on insurer's bad faith in rescinding his policy. At trial, the jury returned a verdict for Claborn for $127,000.00 in actual damages and $110,000.00 in punitive damages.

On appeal to the Court of Appeals, the court reasoned that there was evidence in the record from which the jury could have found for Claborn on the contract claim. The court opined that the Washington National agent could have examined the existing State Farm policy which contained the seizure rider, thus Washington National would have been alerted to Claborn's problem with alcoholism. The Court of Appeals held that Washington National's reliance on Claborn's misrepresentations was not reasonable because of its failure to investigate, thus Washington National did not use reasonable diligence in discovering the alcoholism.

The Court of Appeals also concluded that the imposition of tort liability was inappropriate and the issue of bad faith should not have been submitted to the jury. The Court of Appeals determined that a bad faith claim could not lie as there was a legitimate dispute, and that an insurer clearly had the right to resist payment and litigate any claim to which there is a reasonable defense, since, under Oklahoma law, an insurer has the right to seek rescission of a health insurance policy procured under an application containing a single misrepresentation. The court held that actual damages were proven under the contract action were $77,000.00 concluding that the remaining $50,000.00 of actual damages and the $110,000.00 had to have a basis in the tort claim.

**FALSE INFORMATION PROVIDED BY APPLICANT FOR HEALTH INSURANCE POLICY, WHICH CONCEALED HIS HISTORY OF ALCOHOL–RELATED SEIZURES AND TREATMENT FOR ALCOHOLISM, AMOUNTED TO MISREPRESENTATION AND ENTITLED THE INSURER TO A RESCISSION OF THE POLICY.**

Uncontroverted evidence was presented at trial that the decedent, Claborn, made misrepresentations both at the time of the application and when reached by telephone by the insurance company to confirm the answers. These misrepresentations regarded his problems with alcohol. Uncontroverted evidence was also presented that had the insurance company known of these problems, no policy would have been issued to the decedent. Therefore, the trial court erred in not granting the Washington National's motion for directed verdict made at the close of the evidence.

 36 O.S.1991, § 3609, grants insurer a right to rescind a policy if there are misrepresentations contained in the application and the misrepresentations are material to the risk assumed by the insurer under the policy. This provision applies if the insurer would not have issued the policy had it been aware of the actual fact misrepresented.[1] Thus, in order for an insurer to escape liability under this section for misrepresentation in the application process, the insurer bears the burden of proof to show not only that the statements were untrue, but also that the misrepresentations were either fraudulent, material to the risks or hazards assumed by the insurer, and, in good faith, the insurer would not have issued the policy, or covered the hazard if the true facts had been known in the application. Failure to disclose a la-

tent condition of which the person making application has no knowledge or reason to know does not constitute a defense to an action on the policy. *Mass. Mut. Life Ins. Co. v. Allen,* 416 P.2d 935 (Okl.1965); *Farmers and Banker's Life Ins. Co. v. Lemon,* 204 Okl. 218, 228 P.2d 634 (1951).

 Where the evidence is conflicting as to either insured's state of health at the time of application, or the falsity of insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for resolution. *Brunson v. Mid–Western Life Ins. Co.,* 547 P.2d 970 (Okl.1976); *Atlas Life Ins. Co. v. Eastman,* 320 P.2d 397 (Okl.1957). On review, if we find evidence in the record reasonably supporting the jury verdict on such questions, we are bound to affirm. *Atlas Life Ins. Co. v. Eastman,* 320 P.2d 397 (Okl.1957). We do not find such evidence in the record in this matter. There was evidence presented at trial showing that the misrepresentations made by Claborn were indeed a known falsity to Claborn, and that had Washington National known of these misrepresentations, the insurance company would not have issued the policy to Claborn. Therefore, we must reverse.

 In *Massachusetts Mutual Life Insurance Co. v. Allen,* 416 P.2d 935, 940 (Okl. 1966), this Court when faced with a similar question dealing with *36 O.S.1961, § 3609,* relied upon the following sections of 29 *Am. Jur., Insurance:*

*Sec. 698.* \* \* \* "A 'misrepresentation' in insurance is a statement as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and with an intent to deceive, or which he states positively as true without

---

1. *Title 36 O.S.Supp.1989, § 3609* reads in pertinent part:

 A. All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

 1. Fraudulent; or

 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

knowing it to be true, and which had a tendency to mislead, where such fact in either case is material to the risk."

*Sec. 701.* "Whether a life insurance policy would have been issued had true answers been given in the application cannot be left to the determination of the insurer after the death of the insured. The matter is not to be settled by the mere pronouncement of the company after the death has occurred, but the matter misrepresented must be of the character which the court could say would reasonably affect the insurer's judgment as to the matter of the risk and amount of premium."

Furthermore, the instant matter closely resembles *Vaughn v. American National Ins. Co.*, 543 P.2d 1404 (Okl.1975). In *Vaughn*, the insured provided false information on a life insurance policy that concealed his history of emotional problems, including depression and treatment in the psychiatric ward at Baptist Hospital. The application in *Vaughn* specifically asked if he had any of the aforementioned problems and he answered in the negative. The insured claimed that since he listed his family physician in the application, the insurance company was put on notice on any problems that he might have had regarding the emotional problems. This Court, applying *36 O.S.1971, § 3609*, held that the concealing of such information amounted to misrepresentation which was material to the acceptance of the risk on the life of the applicant. The insurer in *Vaughn* was entitled to rescission of the policy. *Id.* at 1407.

Claborn urges that we not consider *Vaughn* without also considering *Brunson v. Mid–Western Life Ins. Co.*, 547 P.2d 970 (Okl.1976). *Brunson*, however is not controlling in the present case. In *Brunson*, the agent directed relevant questions governing

kidney, gall bladder, female problems and pregnancy at the plaintiff's wife, then without waiting for a response, simply marked "no". The insured had not understood the question to apply to him. In the present case, Mr. Claborn was the only person in the room with the agent and could not have mistaken the questions as being asked to someone else. Furthermore, the present case differs from *Brunson* in that Claborn verified the questions by phone when contacted by Washington National. There was no conflicting evidence as to this fact. Therefore, a directed verdict in favor of Washington National should have been granted.

Washington National was lulled into complacency by Mr. Claborn's application containing false answers. There was nothing in the application that would have alerted Washington National to Mr. Claborn's past seizure episodes as well as his treatment for alcoholism. The insurance company did not rely only on the application, but also telephoned Mr. Claborn to confirm the answers. Furthermore, there is no dispute that Mr. Claborn was untruthful on his insurance application, he admitted the misrepresentation. Nor is there a dispute over whether the insurance policy would have been issued had Claborn been truthful. The Underwriters employed by Washington National testified that if they had known of Mr. Claborn's alcohol-related problems, no policy would have been issued. Mr. Claborn's expert testified that had Mr. Claborn answered all the questions on the application truthfully, Washington National "probably would not have" issued the policy.

In the case at bar, it is evident that the misrepresentations regarding Mr. Claborn's alcoholism [2] contained in the application are material to the risk assumed by the insurer under the policy. The insurer would not

---

2. Although Oklahoma has not yet address this question, other jurisdiction have found a concealed history of alcoholism to be a material misrepresentation. *Hood v. Prudential Ins. Co. of America*, 758 F.Supp. 764 (D.C.D.C.1991); *Watson v. Golden Rule Ins. Co.*, 564 N.E.2d 302 (Ind.App.1990); *Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406 (Alaska 1990); *Laird v. Globe Life & Accident Ins. Co.*, 503 So.2d 1107 (La.App.1987); *Van Riper v. Equitable Life Assurance Society of U.S.*, 561 F.Supp. 26 (D.C.Pa.

1982) *aff'd* 707 F.2d 1397; *Barrett v. Travelers Ins. Co.*, 52 A.D.2d 897, 383 N.Y.S.2d 371 (1976); *Herricks v. Mutual Life Ins. Co.*, 294 Ala. 446, 318 So.2d 683 (1975); *Hofmann v. John Hancock Mut. Life Ins. Co.*, 400 F.Supp. 827 (D.C.Md. 1975); *Leigh v. Consumers National Life Ins. Co.*, 240 Or. 290, 401 P.2d 46 (1965); *Merchants National Bank v. New York Life Ins. Co.*, 346 Mass. 745, 196 N.E.2d 201 (1964); *Metropolitan Life Ins. Co. v. Fugate*, 313 F.2d 788 (5th Cir. 1963).

have issued the policy had it been aware of the facts misrepresented. Furthermore, Claborn never presented evidence that Washington National was ever in possession of the State Farm Policy which contained the rider, thus Washington National could not have had actual knowledge of the rider. Washington National is entitled to rescission of the insurance contract. The trial court erred by not granting Washington National's motion for directed verdict.

## AN INSURER HAS THE RIGHT TO LITIGATE ANY CLAIM TO WHICH THE INSURER HAS A REASONABLE DEFENSE.

■ Under Oklahoma Law, the only tort recognized by this Court in connection with a breach of insurance contract is "[w]here there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okl.1981). Washington National denied Mr. Claborn's claim and rescinded his policy based on the inaccuracies in the application to which Claborn admitted in the letter dated January 7, 1989. There is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured. *Id.* Furthermore, in *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1106 (Okl.1991), this Court held that "[a]n insurer clearly has the right to litigate any claim to which the insurer has a reasonable defense." Washington National rescinded Mr. Claborn's contract based on the material misrepresentations in the application to which he admitted. Such a defense is provided by Oklahoma Statute.[3] These facts made him uninsurable without a rider covering the seizure disorder. Washington National did not act in bad faith in wishing to litigate this matter. As the bad-faith claim was improperly placed before the trier of fact, any award of punitive damages was error.

■ Claborn also argues that by selling an insurance policy, which did not contain the same benefits as the pre-existing State Farm

policy, Washington National acted in bad faith. However, as previously stated, the conduct of the insurer and the agent in selling and issuing the policy, cannot give rise to the tort of bad faith breach of an insurance contract. *McCorkle* at 587. Therefore, judgment of the trial court is reversed.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT JUDGMENT REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.**

KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., by separate opinion, and OPALA, J., concur in part and dissent in part.

HODGES, J., dissents.

ALMA WILSON, Chief Justice, concurring in part and dissenting in part:

I must respectfully dissent from the view of the majority that the insurance company is entitled to rescission of the insurance contract. The Court of Appeals properly upheld the jury verdict of $77,063.04 on the contract claim, so I would deny certiorari as improvidently granted. I agree with both the majority opinion and the Court of Appeals that the bad-faith claim was improperly placed before the jury and that the award of punitive damages was error.

Washington National's agent represented to Claborn that its policy was comparable to Claborn's then existing policy with State Farm. However, the agent never examined the State Farm policy even though Claborn was explicitly seeking replacement coverage. In fact, the two policies were not comparable. Had the agent read the State Farm policy, he would have discovered that it contained an "exclusion endorsement" whereby State Farm would not cover Claborn for any convulsive or seizure disorders. The existence of such a clause would lead the prudent insurer to exercise reasonable diligence in investigating the insured's medical history rather than merely relying on the insured's

**3.** *36 O.S.1991, § 3609,* see note 1.

oral responses to a questionnaire. Had Washington National exercised such reasonable diligence, it would have discovered that Claborn's seizure disorder was related to his alcoholism for which he had been treated within the previous five years. Further, had Washington National known of the past treatment for alcoholism, it would not have insured Claborn who, in turn, would not have allowed his existing State Farm policy to lapse, and the litigation which gave rise to the appeal before us would never have taken place.

Washington National bases its defense of rescission on Claborn's alleged misrepresentations regarding his treatment for alcoholism. However, where an "insurer has information which would have put a prudent person on notice of possible falsity and would have caused an inquiry which, if carried out with reasonable diligence, would have revealed the truth, the insurer cannot rely on the misrepresentation." *Hardy v. Prudential Ins. Co. of Am.,* 763 P.2d 761, 770 (Utah 1988). Moreover, "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." *Silver v. Slusher,* 770 P.2d 878, 881 n. 8 (Okla.1988), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

In its reply brief, Washington National admits that had it known of the rider for seizure disorder, it would have investigated Claborn's medical history rather than relying exclusively on the truthfulness of his representations. Information concerning the rider was within Washington National's control. As a result, because Washington National failed to avail itself of information which was within its control and which would have led a prudent and reasonably diligent insurer to discover Claborn's past treatment for alcoholism, the trial jury in the instant case could have concluded that Washington National's reliance on Claborn's alleged misrepresentations was not reasonable. "A jury verdict and judgment will not be reversed for error, if there is substantial evidence to support the verdict on any theory of law." *Eversole v. Oklahoma Hosp. Founders Ass'n,* 818 P.2d

456, 459 (Okla.1991). Moreover, "where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment based thereon." *Id.* Because there is conflicting evidence on the issue as to whether Washington National's reliance on the alleged misrepresentations was reasonable, I must dissent from the majority opinion's holding on the contract claim.