**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a corporation, Plaintiff in Error,**

v.

**Lena May H. Evans ALLEN, Defendant in Error.**

**No. 40573.**

Supreme Court of Oklahoma.

Dec. 21, 1965.

Rehearing Denied June 7, 1966.

Second Petition for Rehearing Denied July 12, 1966.

936

Robert L. Miles, Miles & Miles, Beaver, Wm. J. Holloway, Jr., Paul R. McDaniel, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

Keith Drum, Lansden, Drum & Goetzinger, Beaver, for defendant in error.

JACKSON, Vice Chief Justice.

This action was initiated by plaintiff, Massachusetts Mutual Life Insurance Company, against defendant-beneficiary, Lena May H. Evans Allen, for cancellation of a life insurance policy issued to defendant's deceased husband, Dearl W. Evans. The material allegations asserted for cancellation were that there were misrepresentations, omissions, concealment of facts, and incorrect statements in the application for the policy; that such representations were (1) fraudulent, were (2) material to the acceptance of the risk or to the hazard assumed by Company, and (3) that insurer in good faith would not have issued the policy if the true facts had been made known to Company.

Defendant, Lena May H. Evans Allen, in answer and cross petition alleged that she was present when her deceased husband made application for the policy; that she and her deceased husband gave Company's soliciting agent, Bob Fenimore, a comprehensive statement of Evans' medical history, and did not misrepresent the facts to agent Fenimore.

From verdict and judgment against plaintiff upon its petition for cancellation and in favor of defendant upon her cross petition, the plaintiff has appealed.

Plaintiff Company's contentions on appeal are that: (1) Under 36 O.S.1961, § 3609, and the uncontradicted evidence plaintiff Company was entitled to judgment as a matter of law; and (2) that in any event, Company is entitled to a new trial for refusal of the trial court to submit to the jury proper instructions on the fundamental and decisive issues under 36 O.S.1961, § 3609.

36 O.S.1961, § 3609, was enacted in 1957 and appears to have been taken from Arizona's Insurance Code (Arizona Revised Statutes § 20–1109), which was enacted by that state in 1954. We have found no case from the Arizona court or this court wherein this section has been construed, and none has been cited.

■ We have given careful consideration to Sec. 3609, supra, and the evidence, and have concluded that Company was not entitled to judgment as a matter of law. Our decision will be better understood after a rather detailed statement of the evidence and events culminating in the issuance of the life insurance policy in question.

Dearl W. Evans, and wife, Lena May H. Evans (now Allen) were students at Oklahoma State University in 1958 and 1959. They received inquiry by mail from Company as to whether they would be interested in life insurance and indicated their interest on February 14, 1959, by returning a postal card. On March 11, 1959, a Company agent, Bob Fenimore, came to their home and during a period of approximately one and one-quarter hours obtained Evans' application for the insurance policy in question. The policy was issued on March 20, 1959. Evans died on December 31, 1959.

Agent Fenimore testified that the defendant and Evans told him that Evans had a run down condition similar to what a lot of college students have who are enrolled in heavy college courses; that the condition was described as not serious, and Evans' doctor had prescribed vitamins and rest and that the condition had cleared up. Fenimore did not consider Evans' run down condition serious at the time and therefore did not mention it in the written application.

Defendant, Mrs. Evans (Allen), testified that Fenimore asked the questions of Evans that appear on the written application form and from the answers given by Evans filled out the application form. That Fenimore asked Evans if he had had a physical or health examination within three years, and Evans told him that he had been under a doctor's care in April, 1958; that in answer to Fenimore's questions Evans said he had been in the hospital for tests and rest; that Evans mentioned Dr. C of Beaver, Oklahoma, as their family doctor; that Dr. C had told him (Evans) he had infectious mononucleosis, a run down condition in students; that in the treatment he had received antibiotics and blood builder; that he was feeling fine; that Dr. C had taken X-rays and blood tests, and that Dr. C's diagnosis was infectious mononucleosis; that Fenimore thought it was irrelevant to put this information on the application form since the doctor had dismissed him. She further testified that Evans read the application and asked Fenimore if he thought the form was filled out right, and that he would take Fenimore's judgment on it; that Evans offered to have a physical examination if Fenimore thought he should.

Defendant further testified that Evans told Fenimore that X-rays had been taken periodically; that nothing was mentioned about surgery, although she knew a lymph node (located under the skin in Evans' neck —approximately 1/3rd of an inch long) had been removed for Dr. C to run tests; that Dr. C made an office check-up on Evans in September, 1958; that Evans appeared to feel alright between September, 1958, and August, 1959. That Evans graduated in August, 1959, and they moved to a farm near Dalhart, Texas.

Company introduced Evans' hospital record at Beaver, Oklahoma, for the period April 7 to April 18, 1958, and called Dr. C

as plaintiff's witness. Dr. C testified as to the tests and treatment of Evans; that his "provisional" diagnosis was Hodgkins disease, but that after receiving and studying a biopsy report he concluded that Evans' condition was infectious mononucleosis, and so advised Evans; that infectious mononucleosis is a run down condition characterized by severe glandular swelling, blood count frequently out of order, tired feeling, not fatal, patients recover from it almost universally; it is a disease "we say you treat out of a grocery store instead of a drug store."

Dr. C further testified that he never diagnosed Evans' condition as Hodgkins disease; did not classify the removal of the lymph node as a serious type of surgery; that it was removed for a test; that Evans never saw the biopsy report, that he never discussed it with Evans; and that the biopsy report was negative as to Hodgkins' disease.

Dr. C further testified that after Evans left the hospital he saw him from time to time and that he wasn't ailing; that the swelling of the lymph nodes subsided.

Evans was feeling bad on December 24, 1959, and visited Dr. C. Dr. C concluded he had "the flu and recommended that he take it easy." A Dr. G saw Evans on December 29, 1959, and diagnosed his trouble then as respiratory infection, and suggested the pain was most likely pleurisy. He gave him penicillin. Evans died on December 31, 1959.

Company's medical director testified that if they had seen Evans' hospital record prior to approving the insurance policy the policy would not have been issued. Dr. N, assistant medical director for Company testified that their Underwriting manual provides: "Hodgkins disease—diagnosis—certain decline"; and that we require an examination before issuing a policy where a policy is applied for within three years of recovery from mononucleosis.

The written application for insurance prepared by Fenimore and bearing Evans' signature shows the following:

"5. A. Have you had a physical or health examination within three years? * * * No.

"6. During the past ten years have you had

A. Advice, attendance, or treatment by physicians, practitioners, or any other person? * * * No.

B. Treatment or observation in a clinic, health resort, hospital, or sanatorium? * *. * No.

C. X-ray, electrocardiagraphic or blood examinations? No.

D. Advice of or treatment for high blood pressure. No.

* * * * * *

"8. At any time have you had

G. Any serious illness, disorder, or injury, or any surgical operation, other than those mentioned. No.

"12. When and for what purpose did you last consult a doctor?
Can not remember. * * *."

In rebuttal testimony Fenimore testified that "So far as run down condition was concerned I told them (Evans) in my opinion based on the information given me the Company would probably go ahead and issue the policy based on the facts presented to me."

In cross examination Fenimore admitted that he put down the wrong answer to question 6, supra, "so far as what we discussed, yes." "Q. You knew it was the wrong answer? A. They knew too. They knew we were talking about his general health." * * * "Q. Actually those two questions (5A and 6, supra) you knew were wrong when you put them down? A. In light of the previous discussions, yes, sir. And so did they." The last sentence is obviously a conclusion of the witness.

In the second paragraph of the syllabus in Security Benefit Ass'n v. Green, 103

Okl. 284, 229 P. 1061, we held in substance that a life insurance agent in asking the applicant questions about his health is presumed to know what his principal desires, and that where the agent prepares the application from the answers given, which he declares to be satisfactory and receives the premium for the insurance, binds his principal by the delivery of the insurance contract; the insured having the right to believe, under the circumstances, that the contract he is receiving from the company gives him the indemnity for which he has paid his money.

In Knights & Ladies of Security v. Bell, 93 Okl. 272, 220 P. 594, we held:

"As a general rule, notice to the agent, and knowledge obtained by him while acting within the scope of his authority, is notice to the principal. This applies to insurance companies and their agents respecting material facts affecting the risk. So, when the facts communicated to the agent had relation to or arise from the subject-matter of the agency, the presumption exists that the agent had communicated such facts to his principal. This is true whether the agent actually does so communicate such facts or not. * * * * "

■ In the body of the opinion in Security Benefit Ass'n v. Green, supra, we said:

"If the agent in the preparation of the application, after receiving full disclosures from the applicant relating to his health, deduced erroneous answers and wrote the same in the application, it is not the fault of the insured."

36 O.S. 1961, § 3609, provides:

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

"1. Fraudulent; or

"2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

"3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

In 29 Am.Jur., Insurance, we find the following statements under the sections as indicated:

Sec. 692. "Concealment implies an intentional withholding of facts of which the insured has or should have knowledge, and the insured cannot be held to have concealed a fact of which he had no knowledge or which he had no duty or reason to know. * * *."

■ Sec. 698. * * * "A 'misrepresentation' in insurance is a statement as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and with an intent to deceive, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such fact in either case is material to the risk."

Sec. 701. "Whether a life insurance policy would have been issued had true answers been given in the application cannot be left to the determination of the insurer after the death of the insured. The matter is not to be settled by the mere pronouncement of the company after the death has occurred, but the matter misrepresented must be of that character which the court could say would reasonably affect the insurer's judgment as to the matter of the risk and amount of premium."

Sec. 704. "In the absence of qualifications in the contract, material representations made in good faith, and with-

out intent to deceive, need not be literally true and accurate in every respect; rather it is sufficient if they are substantially or materially true and correct as to existing circumstances."

Company insists that the removal of the node for biopsy was "surgery" and that it is admitted that this surgery was not reported to Mr. Fenimore; and that if it had been reported the Company would have discovered Hodgkins disease and would not have written the policy.

■ We are unable to follow this argument. By definition a surgical operation is a procedure carried out on a living body for effecting a cure by altering an existing abnormal state or condition, as distinguished from medical. A biopsy is defined as the removal of tissue, cells, or fluids from the living body for examination or study for diagnostic purposes. It is doubtful if the ordinary person would have considered this biopsy as "surgery." In any event we cannot conclude that the Company would have discovered Hodgkins disease if the biopsy had been reported. Dr. C did not discover Hodgkins disease and Dr. K, pathologist who examined the node and testified for Company, testified that his report to Dr. C suggested Mononucleosis. He further testified that there was no diagnosis he could make as to any cancerous condition or Hodgkins disease involved. The findings of Drs. C and K render Company's argument that they would have discovered Hodgkins disease inconclusive. The test is whether insurance companies generally would have rejected the application. New York Life Ins. Co. v. Carroll, 154 Okl. 244, 7 P.2d 440.

■ Company introduced evidence tending to show that Evans' death was caused by Marfans disease. We do not regard this testimony as controlling. There is no evidence that Evans had ever heard of the disease or that any doctor had thought of the disease in connection with Evans until after his death. Failure to disclose a latent disease of which applicant had no knowledge, or reason to know, will not void a life insurance policy. United Benefit Life Ins. Co. v. Knapp, 175 Okl. 25, 51 P.2d 963. An applicant does not warrant his health. Sec. 3609, supra.

Our attention is invited to Campbell v. Prudential Ins. Co. of America, 15 Ill.2d 308, 155 N.E.2d 9; Prudential Ins. Co. of America v. Ashe, 266 Mich. 667, 254 N.W. 243; New York Life Ins. Co. v. Fleck, 73 N.D. 143, 12 N.W.2d 530; Manelas v. National Accident & Health Ins. Co., 89 N.H. 559, 2 A.2d 310; and Jessen v. Aetna Life Ins. Co., 7 Cir., 209 F.2d 453. We have examined those cases and find them distinguishable on the facts. In each of the applications for insurance, or reinstatement, in those cases material misrepresentations as to health or of past medical history were either knowingly made in applying for insurance, or should have been known.

Plaintiff's second proposition for reversal is that plaintiff is entitled to a new trial because the trial court refused or failed to instruct the jury upon the fundamental issues under 36 O.S.1961, § 3609(2) and (3), supra.

■ In support of this argument our attention is first invited to plaintiff's requested instructions Nos. 2 and 3. In these instructions the jury would have been told "if you find * * * there were omissions or incorrect statements *on the application* that were either material to the acceptance of the risk, or the hazard assumed * * * that was relied on" * * *, then your verdict should be for the plaintiff. These requested instructions failed to include all of the statutory language which we believe to be applicable under the facts in this case. Sec. 3609, supra, provides in part:

"All statements and descriptions in any application for an insurance policy *or in negotiations therefor,* by or on behalf of the insured * * *." (emphasis supplied).

The proposed instructions did not include the words "or in negotiations therefor", and would have authorized the jury to disregard the testimony of defendant. It has

been held that it is not error to refuse to give a requested instruction which cannot be given without correction or modification. Colonna v. Eiseman Mfg. Co., 98 Okl. 107, 224 P. 181; Southwest Stone Co. v. Hughes, 198 Okl. 257, 177 P.2d 489.

It is contended that the trial court did not instruct on the material and fundamental issues; that the issues under Sec. 3609, supra, were plainly joined in pleadings and evidence. In this connection plaintiff did very clearly plead all issues and defenses available to it under Sec. 3609, supra, and the trial court quoted plaintiff's petition almost verbatim. In instruction No. 4 the jury was told that if they found that the plaintiff had sustained the material allegations contained in its petition, by a preponderance of the evidence, then it would be their duty to find for the plaintiff and against the defendant. The instructions could have been more precise and explicit, and should have been. However, in view of the fact that the issues as set forth in the instructions followed almost verbatim plaintiff's petition, and Instruction No. 4 authorized argument to the jury in support of the defenses as set forth in Sec. 3609, supra, and as pled, we are unable to find reversible error.

Plaintiff points to two other alleged errors in the trial of this case. The first is that the trial court refused to give its requested Instruction No. 4. If this instruction had been given the jury would have been told that plaintiff presented evidence and contentions as to alleged misstatements "in the application which were material to the acceptance of the risk * * *." This instruction would not have permitted the jury to determine factually whether the alleged misstatements were material to the acceptance of the risk or to the hazard assumed.

The other alleged error is that the trial court permitted defendant to testify that Mr. Evans "felt very well at that time, at the time this (policy) was taken out." It is urged that this was a conclusion from a witness incompetent to testify concerning the condition of Evans' health. On another page of the record the defendant testified that Evans appeared to feel alright between September, 1958, and August, 1959. Her testimony also discloses that Evans told Fenimore that "he (Evans) was feeling fine." We do not believe the jury misunderstood this testimony.

The judgment of the trial court is affirmed.

DAVISON, WILLIAMS, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

HALLEY, C. J., and BLACKBIRD, J., dissent.