**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TERRENCE EDWARDS MURPHY,

     Plaintiff-Appellant,

v.

JEFFERSON-PILOT LIFE INSURANCE
COMPANY, a North Carolina
Corporation,

     Defendant-Appellee.

No. 98-6290
(D.C. No. CIV-97-1747-C)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **MCKAY**, and **TACHA**, Circuit Judges.

---

     Dr. Terrence Edwards Murphy initiated a state court action against Jefferson-Pilot

Life Insurance Company for failure to pay benefits under a disability insurance contract.

The case was removed to federal district court and Jefferson-Pilot moved for summary

judgment based on omissions or fraudulent statements Dr. Murphy made in his

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

application for insurance. Dr. Murphy appeals the district court's grant of summary judgment in favor of Jefferson-Pilot. We affirm.

## I.

In early 1988, Dr. Murphy spent several days at a drug and alcohol treatment program in Florida. Later that year, the Alabama State Board of Medical Examiners filed a complaint concerning Dr. Murphy's inability to practice medicine because of his excessive use of drugs, narcotics, alcohol, or other substances. As a result of the Alabama complaint, Dr. Murphy consented to enter a substance abuse treatment program, submit to monitoring by a psychiatrist and regular blood and urine sampling, and accept a year's suspension and term of probation following the suspension. The Alabama medical board later declined to reinstate his license finding insufficient evidence he had complied with its orders. In Oklahoma, Dr. Murphy agreed to a five-year probation during which he would refrain from using substances, undergo blood and urine tests for substance use, continue his treatment, and report quarterly to the state medical board. In 1988 and 1989, Dr. Murphy had drug screening tests and at least ten months of weekly or bimonthly consultations with Dr. Gary Borrell.

In 1993, Dr. Murphy applied for, and was issued, a disability income insurance policy from Jefferson-Pilot. This original policy provided a monthly benefit in the event Dr. Murphy became disabled and was unable to perform the substantial and material duties of his profession. In 1994, Dr. Murphy applied to increase the monthly disability

coverage.[1]  He completed the application on March 12, 1994, at which time he answered "no" to the following questions.

> 6.  Have you within the past 7 years:
>
> (a)  Sought medical advice or been medically treated for the use of alcohol or other drugs?
> (b)  Been advised by a physician to reduce your consumption of alcohol?
> ….
>
> 7.  Other than the above, have you within the past 7 years:
> (a)  Had a medical … consultation …?
> (b)  Been a patient in a hospital, clinic, sanatorium, or other medical facility?
> (c)  Had an … other diagnostic test?
> (d)  Been advised to have any diagnostic test, hospitalization … which was not completed?

At the request of Jefferson-Pilot, Dr. Murphy had a medical exam and answered additional medical questions on or about April 11, 1994.  Before issuing the policy, Jefferson-Pilot requested details concerning the suspension and probations of Dr. Murphy's medical license.  Dr. Murphy responded, "My license to practice Medicine in the State of Alabama was under suspension for one year in 1987, due to a hearing on hospital staff charges which were later dropped due to no validity of any charges.  I have practiced in Oklahoma since 1988 to present time, under Oklahoma license."  Jefferson-

---

[1] The parties appear to dispute whether the 1994 application resulted in an increase in monthly disability benefit coverage.  The district court made no findings on this issue, and it does not influence our analysis.  Neither party contests that Dr. Murphy sued to collect benefits under the terms of the 1994 policy, which was renewed later that year and in 1995.

Pilot also requested information such as tax returns and medical records of treatment given by Dr. Chestnut, Dr. Murphy's sister. Dr. Murphy did not provide the tax returns, and Dr. Chestnut indicated she had no record of treating Dr. Murphy. Jefferson-Pilot also became aware during the underwriting process that Dr. Murphy had visited Dr. D.L. Trent in June 1992 following a car accident and that this information had not been included in Dr. Murphy's responses to questions on the 1994 application for disability insurance.

Based on his application and the other information furnished, Jefferson-Pilot provided Dr. Murphy disability coverage with a benefit amount of $5,000 per month and a residual disability rider provision for which Dr. Murphy paid an additional premium; the new policy became effective on June 1, 1994. The policy clearly stated:

> **NOTICE – PLEASE READ! THIS POLICY MAY NOT APPLY WHEN YOU HAVE A CLAIM!** This policy was issued based on the information entered in your application, a copy of which is attached to the policy. If you know of any misstatement in your application, or if any information concerning the medical history of any insured person has been omitted, you should write us immediately regarding the incorrect or omitted information; otherwise, your policy may not be a valid contract.

Dr. Murphy allowed his disability policy to lapse for nonpayment in October 1994 and April 1995. Both times, Jefferson-Pilot instructed Dr. Murphy to fill out a reinstatement application and pay all past due premiums. On the April 18, 1995 reinstatement application, Dr. Murphy answered "no" to the following questions:

> 3. Are you taking any medication or treatment, or on any special diet?

> 4. Have you received any medical attention or advice in the past 5 years?

He answered "yes" to the question:

> 5. To the best of your knowledge and belief, are you and all persons named for coverage under this policy now in good health and free from mental and physical impairment or deformity.

The application stated he had read the foregoing answers, understood them to be true and complete, and knew reinstatement was in accordance with the answers. The record showed on January 9 and February 6, 1995, Dr. Murphy had consulted with Dr. Charles Cobb who diagnosed him with Attention Deficit Disorder and prescribed Dexedrine.

On June 16, 1995, Dr. Murphy was diagnosed as suffering from a "major depressive order" and thereby was totally disabled and unable to return to work. He timely submitted a disability insurance claim to Jefferson-Pilot after the contractual ninety-day elimination period on November 3, 1995. Jefferson-Pilot responded four months later but did not make payments. By letter of March 7, 1996, Jefferson-Pilot notified Dr. Murphy that it was rescinding his policy and returning all previously paid premiums. The letter indicated Jefferson-Pilot had received information Dr. Murphy had previous treatment for a medical condition; several questions on Dr. Murphy's application, medical exam and reinstatement application were incorrect; and Jefferson-Pilot believed Dr. Murphy had psychiatric treatment and hospital confinement for substance abuse in 1988.

Arguing Jefferson-Pilot unlawfully breached the insurance contract and its duty to deal fairly and in good faith with its insured, Dr. Murphy sued Jefferson-Pilot for disability benefits and other damages. The district court granted summary judgment in favor of Jefferson-Pilot.

We review the grant of summary judgment employing the same standard used by the district court: summary judgment is only appropriate if there is no substantial controversy about any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court draws all justifiable inferences in favor of the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Further, "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Dr. Murphy contends he met his Rule 56(c) burden by showing that factual elements charged are disputed. *See Anderson*, 477 U.S. at 248 (A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, sufficient to raise a genuine issue of material fact which exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.). He argues Jefferson-Pilot knew about his alcohol problems and treatment when it issued and reinstated the policy and, at the very least, the extent of Jefferson-Pilot's knowledge

presents a question of fact. Further, he says he intended to provide honest answers to Jefferson-Pilot. For example, he did not answer "yes" to questions about "treatment" because he thought he was only being "evaluated" in 1988 to defend against allegations of substance abuse in order to maintain his medical license and hospital privileges. He "never perceived" he was a "patient" in a hospital, clinic, sanatorium, or other medical facility, and therefore his answer was complete and honest.

To defeat a summary judgment motion, however, the non-movant must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Jefferson-Pilot argues the evidence is so "one-sided one party [Jefferson-Pilot] must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Under Oklahoma law, an insurer is entitled to avoid its obligation under an insurance policy if the applicant made misrepresentations in his application that were fraudulent, material to the risk, and the insurer, had it known the truth, would not in good faith have issued the policy. Okla. Stat. tit. 36 § 3609 (1991); *Burgess v. Farmers New World Life Ins. Co.*, 12 F.3d 992, 993 (10th Cir. 1993). Intent to deceive is required, and that intent may be inferred from the facts. *See Hays v. Jackson Nat'l Life Ins. Co.*, 105 F.3d 583, 587 (10th Cir. 1997).

Jefferson-Pilot argued Dr. Murphy knew material[2] information to be untrue and knowingly gave that information in violation of prohibitions against "misrepresentation" in insurance applications. *See* Okla. Stat. tit. 36 § 3609. He further committed "concealment" when he intentionally withheld facts of which he should have had knowledge, ***Massachusetts Mut. Life Ins. Co. v. Allen***, 416 P.2d 935, 940 (Okla. 1965), and obviously omitted a good deal of crucial information.

We agree the only reasonable inference is Dr. Murphy intended to conceal his medical history and deceive the insurance company. Perhaps we can ascribe a few misrepresentations or omissions to good faith misinterpretation of question terms like "treatment," but he made many such errors on several forms. The nature of the misrepresentations, concealment, and omissions was shown by Jefferson-Pilot through documentary evidence of Dr. Murphy's true medical history, substance abuse treatment, and medical board run-ins. Unlike the plaintiff in ***Brunson v. Mid-Western Life Ins. Co.***, 547 P.2d 970 (Okla. 1976), Dr. Murphy provides no "plausible, innocent explanation," for the pervasive omissions and untruths. ***Hays***, 105 F.3d at 589. Moreover, Dr. Murphy's argument regarding Jefferson-Pilot's obligation to investigate obvious half-

---

[2]Materiality is shown if, with the correct information, the insurance company would not have issued the policy. Jefferson-Pilot's brief states numerous times it would not have insured Dr. Murphy if it had known of his alcohol problems and treatment. We note, however, Jefferson-Pilot has provided no example of cases where it has, in fact, denied insurance on similar grounds.

truths he supplied on applications has been rejected by *Vaugh v. American Nat'l Ins. Co.*, 543 P.2d 1404, 1406-07 (Okla. 1975).

We can empathize with Dr. Murphy whose profession has been gravely harmed by his alcoholism and understand why he would need disability insurance because of his condition. Yet, the evidence points only in Jefferson-Pilot's favor that Dr. Murphy misrepresented and concealed the truth in his applications. The district court properly granted summary judgment.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge