2012 OK 111

**Shannon M. BENSON, Plaintiff/Appellee,**

**v.**

**LEADERS LIFE INSURANCE COMPANY, Defendants/Appellants.**

No. 107,956.

Supreme Court of Oklahoma.

Dec. 18, 2012.

Rehearing Denied March 28, 2013.

Terry J. Garrett, Terry J. Garrett & Associates, P.C., Norman, Oklahoma, Terry S. O'Donnell, Adam S. Weintraub, Savage, O'Donnell, Affeldt, Weintraub & Johnson, Tulsa, Oklahoma, for Plaintiff/Appellee.

James W. Rhodes, Johnny R. Blassingame, Jr., Kerr, Irvine, Rhodes & Ables, Oklahoma City, Oklahoma, for Defendant/Appellant.

COMBS, J.

¶ 1 On March 24, 2005, Michael Todd Benson (Applicant) made an application to Leader Life for a $90,560.00 life insurance policy, naming his wife Shannon, as Beneficiary. The application asked if the applicant had ever been treated for liver disease, had any medical or surgical treatment in the last five years or any departure from good health and whether or not the applicant had ever had an alcohol or drug problem. Applicant answered yes to the departure from good

health question and told the insurance company that he had a blood clot in his leg in October of 2003 and was treated by Dr. Mehran Shahsavari of Norman, Oklahoma. Applicant answered no to the Liver disease question and no to the alcohol question. When Leaders Life asked about the blood clot issue, Mr. Benson informed the .insurance company that he had been treated for "deep vein thrombosis" and was prescribed Coumadin which he was no longer taking. Leaders Life accepted this answer and issued the underlying policy in this action.

¶ 2 On March 17, 2006, Applicant was on foot, pushing a stalled car out of the street when he was struck by another vehicle which eventually resulted in his death. Beneficiary filed for benefits under the policy. Leaders investigated the claim. They received the hospital records pertaining to his death, which also noted his blood alcohol at his time of death was .24 although the owner of the car testified that he smelled no alcohol on the applicant.[1]

¶ 3 Michelle Houchin, the Underwriter and claims administrator for Leaders Life, investigated the claim in the present matter. She ordered the records from the accident and from the 2003 treatment for the deep vein thrombosis. After reviewing the records she concluded that Mr. Benson had falsified his answers on his application and rescinded the policy due to Mr. Benson's alcoholism. She testified that Leaders Life would rescind the policy even if the mistake was innocent. She further testified that the state of mind of the applicant was never considered. She also testified that alcohol played no part in Mr. Benson's death and agreed that the policy application was ambiguous in her deposition but changed that testimony at trial saying it was not ambiguous. Ms. Houchin also did not follow Leaders Life internal policy and interview the agent who assisted Mr. Benson in filling out the application for the policy.

¶ 4 Section 3609 of Title 36, 2005 Supp. is controlling in the instant matter. It was the law at time of the policy. It states as follows:

**Representations in Applications—Recovery under policy—Mortgage guaranty policies**

A. All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent; or

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

B. Subsection A of this section shall not be applicable to mortgage guaranty insurance, as hereinafter defined. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under a policy of mortgage guaranty insurance unless material and fraudulent. As used herein, the term "mortgage guaranty insurance" means a form of casualty or surety insurance insuring lenders against financial loss by reason of nonpayment of principal, interest and other sums agreed to be paid under the terms of any note, bond or other evidence of indebtedness secured by a mortgage, deed of trust or other instrument constituting a lien or charge on real estate which contains a residential building or a building

---

1. Mr. Willige testified that he was two feet away from Mr. Benson and that he smelled no alcohol from Mr. Benson. (Tr. 390–391.) Additionally, in the present matter the Court of Civil Appeals relied on evidence not allowed at trial in its decision. The Court of Civil Appeals cites undisputed evidence that an arrest for public intoxication and treatment for alcohol dependency which were never sought or considered by Insurer during its claims investigation. This evidence was not admitted into evidence at trial and the admissibility is not the subject of this appeal. The Court of Civil Appeals also noted that the car being pushed by Mr. Benson was stuck in a snow bank. It was not, the car was out of gas. (Tr. 388)

designed to be occupied for industrial or commercial purposes.

¶ 5 This Court has previously discussed the aforementioned statute several times. Our first decision under § 3609 was *Massachusetts Mutual Life Ins. Co. v. Allen*, 1965 OK 203, 416 P.2d 935, in which insurer sought to cancel a life insurance policy because when insured made application for the policy he did not disclose a previous biopsy of a lymph node and he gave incorrect statements to the agent. Beneficiary testified the biopsy was not considered significant and that the agent told insured the form was filled out correctly. The agent admitted that he put down a wrong answer on the application.

¶ 6 Insurer appealed and contended it was entitled to judgment as a matter of law under § 3609 because the insured's misrepresentations, omissions, concealment of facts and incorrect statements were (1) fraudulent, (2) material to acceptance of the risk assumed by the company, and (3) that in good faith it would not have issued the policy if the true facts had been made known. Affirming the judgment in favor of the beneficiaries, the Court rejected insurer's views of the statute's construction and defined the statute's terms to require "intent to deceive" on the part of the insured. In the body of the opinion we quoted and adopted the following definition of misrepresentation at ¶ 23:

> "A 'misrepresentation' in insurance is a statement as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and *with an intent to deceive*, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such fact in either case is material to the risk." (quoting 29 Am.Jur., Insurance at § 698.)(emphasis added).

"Concealment of fact" was similarly defined:

> "Concealment implies an *intentional withholding of facts* of which the insured has or should have knowledge, and the insured cannot be held to have concealed a fact of which he had no knowledge or which he had no duty or reason to know." (quoting 29 Am.Jur. Insurance at § 692)(emphasis added).

¶ 7 In *Massachusetts Mutual Life Ins. Co. v. Allen*, 1965 OK 203, 416 P.2d 935, the Court's definitions of "omission" and "incorrect statement" were stated as follows:

> ¶ 0 ... "An 'omission' in negotiations for a life insurance policy under 36 O.S.1961, § 3609, is an *intentional omission* to disclose a fact or condition which is material to the acceptance of the risk or the hazard assumed ...." (emphasis added)

> "An 'incorrect statement' in negotiations for a life insurance policy under 36 O.S. 1961, § 3609, is a statement of fact which is untrue and known to be untrue, or so carelessly made that an *intent to deceive may be inferred.*" (emphasis added)

¶ 8 We have four times followed *Massachusetts Mutual*'s requirement of a finding of an "intent to deceive" the insurer before a policy may be avoided by reason of the insured's false statement or omission in the application. In *Whitlatch v. John Hancock Mutual Life Insurance Co.*, 1968 OK 6, ¶ 11, 441 P.2d 956, 959, the Court, reversing judgment in favor of the insurer on its motion for directed verdict, stated that *Massachusetts Mutual* had "defined the terms, enumerated in [§ 3609], which are made grounds for avoidance of a policy," and had applied the rule that questions as to the falsity of statements in an application and applicant's intent in making the statement are questions for determination by the jury, not questions of law for the court. Insurer admitted at trial that the only reference to Benson ever being told not to drink alcohol by a physician was once in 2003 while on the anticoagulant, Coumadin. Specifically, the medical record states, "[t]he risks of anticoagulation, the importance of having a close follow-up with his family physician was emphasized with the patient. The importance of quitting drinking while the patient is on Coumadin and the risks of bleeding with a fall, if the patient drinks with a gastrointestinal bleed with continued drinking was emphasized with the patient." Insurer also admitted that by the time Benson completed the policy application that he had been off Coumadin for several months nor did Insurer discuss Benson's alcohol use with his physician.

¶ 9 In the present matter, the Insurer presented evidence to the jury that Mr. Benson lied on his application. However, the agent who assisted Mr. Benson noted that he was in a big hurry and didn't even fill out the beneficiary portion of the application. She had to call him back and have him do it. Insurer stated that they would rescind a policy even if there was an innocent mistake made on the application, and that state of mind of the applicant is never considered. Mr. Benson filed a medical release that was never used until his death and any questions of alcohol use would have been evident had the Insurer investigated this matter properly. The issue of intent to deceive was the primary focus of the entire trial. The underwriter testified that if Mr. Benson had indicated he had liver disease they would have obtained his medical records prior to issuing a policy, however, the deep vein thrombosis was not at any time given much weight and no medical records were ordered. She also stated that if alcohol use was marked on the application they would have sent out an alcohol questionnaire, and here no policy would have ever been issued. In rendering its verdict, the jury considered all the evidence presented at trial and rendered a verdict in favor of the beneficiary.

¶ 10. In *Brunson v. Mid–Western Life Ins. Co.*, 1976 OK 32, 547 P.2d 970, we quoted and approved the definition of "misrepresentation" from *Massachusetts Mutual* expressly requiring the intent to deceive insurer and following that rule, we affirmed the trial court's judgment in favor of insured based on his lack of intent to deceive the insurer. ¶ 20, 973. We noted that an insurer relying on the defense of misrepresentations by the insured in his application bears the burden of pleading and proving the facts necessary to sustain the defense, and that the "[q]uestion of falsity of statements ... and intent of applicant in making them is for the jury." ¶ 21, 973. Finding that uncontroverted testimony in the jury-waived trial showed Brunson did not intend to deceive his insurer by his false answers, we also upheld the trial court's determination that there was "no misrepresentation" on his part.

¶ 11 In *Claborn v. Washington National Insurance Co.*, 1996 OK 8, 910 P.2d 1046, we again quoted and relied on the definition of "misrepresentation" set forth in *Massachusetts Mutual* and *Brunson* explicitly requiring "intent to deceive" the insurer in order to defend against payment of policy under § 3609. Based on that requirement we found that the insurer was entitled to rescission of the policy and judgment where evidence showed that the "misrepresentations made by Claborn were indeed a known falsity to *Claborn*." ¶ 11, 1049. Citing *Brunson*, the *Claborn* court stated that "[w]here evidence is conflicting, as to either insured's state of health at the time of application, or the falsity of insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for resolution." ¶ 8, 1049.

¶ 12 In *Scottsdale Insurance Company v. Tolliver*, 2005 OK 93, 127 P.3d 611, this Court received a certified question of law from the Northern District of Oklahoma pursuant to the Oklahoma Uniform Certification of Question of Law Act, 20 O.S.2001, § 1601, et seq. as follows:

> Whether Oklahoma law requires a finding the insured intended to deceive the insurer before a misrepresentation omission or incorrect statement on an insurance application can serve as a ground to prevent recovery under the policy pursuant to Okla. State Tit. 36 § 3609. See *Hays v. Jackson National Life Insurance Co.*, 105 F.3d 583 (10th Cir.1997).

This Court directed the Federal Court to this Court's previous holdings recognizing a finding of intent to deceive to avoid a policy, as well as a jury determination as to the intent to deceive. In the present matter, the Insurer presented much evidence at trial that they would never had issued this policy had they known of Mr. Benson's alcohol use. The underwriter went to great lengths to state this fact. However, the jury considered that Insurer admitted that the policy was ambiguous, that it had examined only a portion of Mr. Benson's medical records and that Insurer's investigation sought only medical information inconsistent with the application and they did not even investigate the question of

whether or not Mr. Benson intended to deceive them to obtain his insurance policy.

¶ 13 *Massachusetts Mutual, Whitlatch, Brunson, Claborn* and *Scottsdale* are controlling precedent from this Court requiring a finding of insured's intent to deceive an insurer before a misrepresentation, an omission or incorrect statement in an application can avoid the policy under § 3609. This matter must be given to the jury for determination and when properly submitted is not an issue to be determined by this Court. In *Florafax International, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, this Court set forth the general appellate standard of review concerning actions at law tried to a jury. This Court said in *Florafax:*

> In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon. Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal. In an appeal from a case tried and decided by a jury an appellate court's duty is not to weigh the evidence and determine which side produced evidence of greater weight, i.e. it is not an appellate court's function to decide where the preponderance of the evidence lies-that job in our system of justice has been reposed in the jury. In a jury-tried case, it is the jury that acts as the exclusive arbiter of the credibility of the witnesses. Finally, the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

1997 OK 7, ¶ 3, 933 P.2d at 287 (citations omitted).

¶ 14 In plain language, we are not allowed to substitute our judgment for that of the jury merely because we would have decided or viewed disputed material fact questions differently than the jury. Where competent evidence was presented at trial to support reasonable findings as to those material fact questions relating to the claim in suit and no reversible error is otherwise shown, an appellate court must affirm a judgment based on a jury verdict, not second-guess such judgment or the jury verdict upon which it is based. These general principles guide our review here.

¶ 15 In the present matter, at trial, Leaders Life made clear that they believed there were material misrepresentations made by Mr. Benson. They argued that insured had attempted to deceive them. However, the trier of fact, the jury did not find that such a misrepresentation had been made. They decided in favor of the beneficiary, Shannon Benson and awarded her $350,000.00 dollars in actual damages and $10,000.00 in punitive damages. In the present matter, Mr. Benson did not die from an alcohol related illness; he died by being hit by a car attempting to assist a stranded motorist. If he had ignored the stranded motorist, Mr. Willige, Mr. Benson would have not been struck and may still be alive and working today. This Court cannot substitute its judgment for that of the jury under the case law presented in this lawsuit. *Brunson v. Mid–Western Life Ins. Co.*, 1976 OK 32, ¶ 21, 547 P.2d 970; *Whitlatch v. John Hancock Mutual Life Insurance Co.*, 1968 OK 6, ¶ 11, 441 P.2d 956; *Scottsdale Insurance Company v. Tolliver*, 2005 OK 93, ¶ 11, 127 P.3d 611.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT'S JUDGMENT REINSTATED.**

¶ 16 COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, GURICH, JJ. concur.

TAYLOR, C.J., WINCHESTER, J., dissent.

¶ 17 TAYLOR, C.J., with whom WINCHESTER, J., joins dissenting.

I would affirm the unanimous Court of Civil Appeals. Mr. Benson was asked very

specific and material questions on this life insurance application. It is undisputed that he did not answer those important questions truthfully. His estate should not benefit from this deception. *Title 36 O.S.2011, Section 3609.* He did not tell the truth and now the insurance company has to pay bad faith punitive damages. What is wrong with this picture?